UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| WILLIAM BRIDGE, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | No. 3:12 CV 360 |
| ) | |
| NEW HOLLAND LOGANSPORT, INC., ) | |
|     Defendant. ) | |

## OPINION AND ORDER

This matter is before the court on defendant New Holland Logansport, Inc.'s (Defendant or "NH Logansport") motion for summary judgment. (DE # 21.) NH Logansport sells and services heavy agricultural equipment (*e.g.*, tractors)[1] and employed plaintiff William Bridge (Plaintiff or "Bridge") in its parts department where he performed sales and customer service functions. On or about March 15, 2011, NH Logansport terminated Bridge's employment. After pursuing the necessary prerequisite charge with Equal Employment Opportunity Commission, Bridge brought this action alleging that his termination was on account of his age and in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. 621, *et seq.* The ADEA only applies to employers who have twenty or more employees for each working day of at least twenty weeks in the year. 29 U.S.C. § 630(b). NH Logansport requests summary

---

[1] Although it is not stated anywhere in the parties' filings, it appears that "New Holland" is the brand name for agricultural equipment manufactured by CNH Global NV. (**http://en.wikipedia.org/wiki/New_Holland_Agriculture**, last visited March 23, 2015.) Again not stated, it appears that NH is an independent dealership, much like a Ford or Chrysler auto dealership, although it also sells other manufacturers' products.

judgment on the basis that it did not have that many employees, and that is the only issue raised in its motion for summary judgment.

*Legal Standard*

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate: "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Matz v. Klotka*, 769 F.3d 517, 522 (7th Cir. 2014). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in his or her own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). If the nonmoving party fails to establish the existence of an essential element on which he or she bears the burden of proof at trial, summary judgment is proper. *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

*Facts*

The pertinent undisputed facts[2] in this case are as follows. NH Logansport was incorporated by James Straeter in 1994 when he acquired an existing farm equipment dealer at that location. (DE #22-4 at ¶4; DE #22-5.) NH Logansport is incorporated in the form commonly known as an "S" corporation, and during the relevant time period had two shareholders: James Straeter who holds 87.5% of the shares, and Michael Stephenson, the manager of NH Logansport, owning the remaining 12.5%. (DE #22-4 at ¶4.)

Straeter also owns other companies that operate stores selling and servicing agricultural equipment, including one called New Holland Rochester ("NH Rochester"). (*Id*. at ¶ 5.) NH Rochester is a "C" corporation which Straeter founded in 1989, and during the relevant times he owned all of its shares. (*Id*. at ¶6.) NH Logansport and NH Rochester are approximately 25 miles apart from each other, and in general each serves its own geographical area. (*Id*. at ¶7.) Each corporation has its own federal employer identification number, files its own tax returns (although NH Logansport's federal tax returns for 2010 and 2011 used NH Rochester's address, see DE #22-6), reports its own state tax contributions, has its own set of bank accounts, and has its own bills, invoices and third-party relationships. (*Id*.) NH Logansport does its own

---

[2] The court relies only on facts which are not in dispute or, if disputed, on the version most favorable to Bridge. Additional "facts" viewed in this manner will be added in the court's analysis. In addition, if it is necessary to describe a version of a fact that is more favorable to NH, the court does so only to explain some issue in dispute, and will make it clear that it is doing so.

radio and print advertising in its geographical area, and is billed for that advertising at its address in Logansport. (DE #22-11.)

However, the two corporations do share some resources. NH Logansport advertises on the website "newhollandrochester.com," as do all of the companies owned by Straeter. (DE #22-12.) On the website each business is identified separately with a separate address, phone number and hours. (*Id*.) Personnel records, tax records, and employment documents for both are kept at NH Rochester's location. (*Id*. at ¶8.) Payroll for both locations is managed by Melinda Straeter (owner James Straeter's spouse) from NH Rochester. (*Id*.) An employee (of which corporation NH Logansport never explicitly states[3]) named Robert Cannedy manages human resources for both corporations from NH Rochester. (*Id*.) Cannedy spends at least one day a week at NH Logansport, however. (DE #26-4 at 2, ¶ 4.)

NH Logansport itself never employed twenty or more employees at any one time in either 2010 or 2011. (*Id*. at ¶9.)[4] However, as explained in the analysis below, Bridge

---

[3] Bridge states that Cannedy is a NH Rochester employee, DE #25, and this appears correct as Cannedy's name does not appear in the payroll summary for NH Logansport. However, Bridge also says that personnel records are "kept in Bob Cannedy's office at New Holland Logansport." *Id*. This statement might simply be an error, and the citation to Straeter's deposition to establish that fact does not do so. Instead, in the cited portion of his deposition Straeter stated that he was not sure if personnel records for Logansport were kept in Logansport or in Cannedy's office at Rochester. (DE #26-1 at 8.) Two months earlier in his affidavit Straeter had stated that the records were kept in Rochester. (DE #22-4 at ¶ 8.)

[4] Straeter's assertion of this fact in his affidavit is further supported by evidence such as payroll documents, *e.g.*, DE #22-14.

4

argues that this fact is not true or is at least disputed because NH Rochester employees should be counted as NH Logansport employees, which is the reason he gives for the court to deny summary judgment.

As Bridge characterizes it, there is a "close integration of operations" between NH Logansport and NH Rochester. (DE #25 at 3.) The evidence supporting Bridge's characterization, as he organizes it but as abbreviated by the court,[5] consists of 12 points:

    1. Straeter's common ownership of both corporations;

    2. A common board of directors consisting of Straeter and his spouse, with the addition of Stephenson to NH Logansport's board;

    3. Cannedy, a NH Rochester employee, performs human resources functions for both corporations and keeps personnel records in his office at NH Rochester;

    4. NH Logansport employees often attend training sessions at NH Rochester;

    5. Both corporations use the same software to track their inventory, can look at the other's inventory using it, and Bridge and other NH Logansport employees have occasionally gone to NH Rochester to help with inventory issues;

    6. The common website mentioned above, which on its home page states: "Here you can find information involving New Holland, search our used equipment, and find out what is happening at our locations in Rochester, Logansport, Rossville, Bluffton, and Centerville in Indiana;"

    7. The two locations frequently share tools and equipment, and order some supplies together to obtain a larger quantity discount;

---

[5] Citations to supporting evidence are in Bridge's response (DE #25) to NH Logansport's motion.

8. Employee benefits at both locations are the same and the employees are on the same group health insurance plan;

9. Stacy Conner, a NH Rochester employee, does all of the accounting functions for both corporations, and keeps all financial records, at NH Rochester;

10. As stated above, both corporations use NH Rochester's address on their federal tax returns, and keep all tax records at NH Rochester, which is also where an audit of NH Logansport was conducted;

11. Payroll functions are performed from NH Rochester's location; and

12. Monthly sales meetings, which NH Logansport staff attend, are conducted at NH Rochester. The two corporations hold a joint annual holiday party.

Although Stephenson manages NH Logansport and makes personnel decisions, Straeter was involved in the decision to terminate Bridge. (DE #26-6 at 1; DE #22-15 at 4, Int. #3.) On the day that Stephenson terminated Bridge's employment, he told Bridge that "he did not want to . . . but that Jim Straeter told him to get rid of me." (DE #26-4 at 2, ¶ 8.)

*Analysis*

As stated above, the ADEA only applies to employers who have 20 or more employees during the relevant time period:

> The term "employer" means a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

29 U.S.C. § 630(b). The Supreme Court has held "that the threshold number of employees for application of Title VII is an element of a plaintiff's claim for relief, not a

6

jurisdictional issue," *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006), and the other federal anti-discrimination statutes, including the ADEA, use the same rules for determining number of employees. *Papa v. Katy Industries, Inc.*, 166 F.3d 937, 939 (7th Cir. 1999).

Bridge does not dispute that NH Logansport itself had fewer than 20 employees at all relevant times (except for his alternative argument regarding Melissa Straeter, Stacy Conner, and Bob Cannedy, explained further below). His argument, instead, is that NH Logansport and NH Rochester must be treated as a single enterprise and their employees summed—meeting the 20-employee threshold—because Straeter, who runs NH Rochester ordered Bridge's termination, and NH Logansport and NH Rochester function as one company:

> The law is clear that where an adverse employment action affecting an employee of one entity is directed by an affiliated entity, the employees of both entities must be combined in determining whether the total number of employees meets the number required by the statute for coverage. *Worth v. Tyer*, 276 F.3d 249, 260 (7th Cir. 2001); *Papa v. Katy Industries, Inc.*, 166 F.3d 937, 941 (7th Cir. 1999)  Because of the close integration of operations between Logansport and Rochester and because the facts are disputed as to whether Stephenson acted independently or was directed by Straeter from Rochester, Defendant's motion for summary judgment should be denied.

(DE #25 at 3.)

The evidence that Bridge puts forward to establish that NH Logansport and NH Rochester are closely integrated has been summarized above, but are irrelevant in that context. As made clear in both the *Papa* and *Worth* cases cited by Bridge, the fact that

7

NH Logansport and NH Rochester may have had closely-integrated operations is of no consequence:

> [T]his Circuit no longer applies the "integrated enterprise" test to Title VII claims. *See Papa*, 166 F.3d at 941–43. . . . We stated that the "integrated enterprise" test was too amorphous to be applied consistently.

*Worth*, 276 F.3d at 260. Although Bridge agrees that in *Papa* "the Seventh Circuit rejected the four-factor test used by the National Labor Relations Board to resolve issues of affiliate liability under the laws administered by the Board," (DE #25 at 15), he nevertheless insists that *Papa*'s new "test employed by the Seventh Circuit is not incompatible with the four-factor test applied by the EEOC and the majority of the Circuit Courts when the focus of the inquiry, as here, is on the role of the affiliate with respect to the personnel decision challenged by the Plaintiff." (*Id.*)

This assertion is incorrect—*Papa* flatly rejects the four-factor test—and results from Bridge's misunderstanding of a portion of the opinion, as evidenced by his (apparently unintentional) misquotation of the case. As Bridge quotes *Papa*:

> We cannot blame the lawyers for structuring their analysis this way [analysis of the four factors], because we and other courts of appeals have often done likewise, although the four-factor test is cited or recited, *the focus of the opinions is on whether the parent corporation made the personnel decision – committed the discriminatory act – of which the plaintiff was complaining.* There is no necessary incompatibility between the two lines of case.

(DE #25 at 15-16.) (Bracketed portion, emphasis added, internal citations omitted, by Bridge.) Accurately quoted, however, with the same citations omitted as indicated, what the opinion actually says is:

8

> We cannot blame the lawyers for structuring their analysis this way, because we and other courts of appeals have often done likewise [citations omitted]—though not always. In [other citations omitted], although the four-factor test is cited or recited, the focus of the opinions is on whether the parent corporation made the personnel decision—committed the discriminatory act—of which the plaintiff was complaining. There is no necessary incompatibility between the two lines of case.

*Papa*, 166 F.3d at 939-40. What *Papa* is actually saying is that cases using the four-factor test, as opposed to cases focusing on whether the parent corporation made the decision (and using the four-factor test as part of the inquiry), are not incompatible. *Papa*, however, rejects the four-factor test as being useful for either purpose:

> There is enough uncertainty about the standard to warrant a fresh look. This is especially appropriate because of the vagueness of three of the four factors (all but "common ownership" and it, as we shall see, is useless) . . .
>
> . . .
>
> The claim that a group of affiliated corporations is "integrated," the sort of claim that the four-factor test might be thought to support, not only is vague, but is unrelated to . . . the policy behind the exemption for employers that have very few employees.

*Id*. at 940, 942.

As opposed to the vagueness of the four factors and integrated-enterprise test, after *Papa* there are three circumstances in which corporate affiliates will be treated as a single employer: 1) where traditional circumstances exist for "piercing the corporate veil;" 2) where an enterprise splits itself into separate corporations for the express purpose of evading application of the anti-discrimination laws; and 3) where the parent corporation ordered the discriminatory act or practice. *Worth*, 276 F.3d at 259-60; *Papa*, 166 F.3d at 940-41.

Bridge makes no argument on the second of the three circumstances, and there is no evidence of such an improper purpose. If anything, the creation of NH Rochester in 1989 and then of NH Logansport five years later to acquire an existing company with its own liabilities suggests the opposite.

As for the first circumstance, Indiana courts are "reluctant to disregard a corporate entity, but will do so to prevent fraud or unfairness to third parties." *Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1232 (Ind. 1994). The Indiana courts have listed a plethora of factors for courts to examine in order to determine whether to do so, and the factors vary based on the reason a plaintiff a plaintiff is trying to negate separate corporate existence. Among the factors are:

1) undercapitalization of the corporation;

2) the absence of corporate records;

3) fraudulent representations by corporation shareholders or directors;

4) use of the corporation to promote fraud, injustice, or illegal activities;

5) payment by the corporation of individual obligations;

6) commingling of assets and affairs;

7) failure to observe required corporate formalities;

8) conduct ignoring, controlling, or manipulating the corporate form;

9) use of similar corporate names;

10) sharing common principal corporate officers, directors, and employees;

11) similar business purposes;

12) intermingling of assets and records;[6] and

13) locating the corporations in the same offices and use of the same telephone numbers and business cards.

*Meridian North Investments LP v. Sondhi*, 2015 WL 773598 at *4 (Ind. App. 2015); *Oliver v. Pinnacle Homes, Inc.*, 769 N.E.2d 1188, 1192 (Ind. App. 2002).

Although Bridge does not address the piercing issue specifically, the factors he relies on to show integration have a great deal of overlap with the factors in the piercing analysis, and so are relevant. Although many of the factors used to pierce the corporate veil are present in this case, the majority are not. To the extent some factors are present, for example, having an employee of one corporation do accounting for the other, as *Papa* explains economies of scale necessitate small, related companies integrating their operations by, for example, putting employees in one insurance plan or having one accountant oversee payroll. *Papa*, 166 F.3d at 942.

More importantly, without embarking on a lengthy discussion of the Indiana cases elaborating on the piercing factors, the court can summarize by saying that the overriding theme in all of them is that the corporate form was used abusively, to deceive the public and creditors into thinking they were dealing with one company to their detriment. That essential nub is not present here. To give one example to the contrary, the shared website which Bridge asserts shows that the corporations operated

---

[6] The fact that NH Logansport kept many of its business records (personnel, tax returns, etc.) at NH Rochester is not intermingling of records. *Oliver v. Pinnacle Homes, Inc.*, 769 N.E.2d 1188, 1195 (Ind. App. 2002).

as one states: "Welcome to the website for the following companies: New Holland Rochester, Inc., New Holland Logansport, Inc., Rodkey New Holland Inc., New Holland Tri-County, Inc., Ag Technologies, Inc., and New Holland Centerville, Inc.," (DE #26-5), clearly identifying the separate corporate existence of each. In short, none of the evidence Bridge has presented to show integration, looked at through a veil-piercing lens, shows that NH Logansport and NH Rochester (or their related entities) are using the corporate form to deceive others and avoid obligations. There is simply not enough evidence to create a factual question whether to pierce the corporate veil.

This leaves Bridge's argument that Stephenson was "directed by Straeter" (DE #25 at 3), to terminate Bridge. The *Papa* case does say that a parent corporation is lumped together with its affiliate if it "directed the discriminatory act, practice, or policy of which the employee of its subsidiary was complaining." *Papa*, 166 F.3d at 941. However, reading the cases cited in *Papa* to support this proposition, what this means is the parent exerted a great more degree of control than what typically inheres in the ordinary relationship between corporate affiliates. As stated in the *Lusk* case cited in *Papa*: "Only evidence of control suggesting a significant departure from the ordinary relationship between a parent and its subsidiary—domination similar to that which justifies piercing the corporate veil—is sufficient to rebut this presumption and to permit an inference that the parent corporation was a final decision-maker in its subsidiary's employment decisions. *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 778 (5th Cir. 1997) (internal citation omitted).

Thus, as NH Logansport argues in its reply memorandum, if Straeter did tell Stephenson to terminate Bridge, what of it? Straeter himself is not NH Logansport, and his directive doesn't show that NH Rochester was dominating and controlling NH Logansport. Straeter is a director of NH Logansport, as is Stephenson. Under Indiana's corporate code, as is typical, "[a]ll corporate powers shall be exercised by or under the authority of, and the business and affairs of the corporation managed under the direction of, its board of directors." Ind. Code § 23-1-33-1(b). Because directors are supposed to manage the affairs of the corporation, there is nothing untoward about one director, Straeter, telling another, Stephenson (who also had the final authority to hire and fire at NH Logansport), to fire an employee. Consistent with a thorough examination of the authorities cited in *Papa*, there is a "well established principle that directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership." *Lusk*, 129 F.3d at 779. Bridge has pointed to no evidence suggesting that Straeter was acting as a director of NH Rochester, and not a director of NH Logansport, so there is no evidence which would allow a jury to find that NH Rochester directed that Bridge be terminated.

Finally, Bridge makes one alternative argument. He asserts that employees Melissa Straeter, who does NH Logansport's payroll, Cannedy, who handles NH Logansport's human resources, and Stacy Conner, who does NH Logansport's accounting, although all formally employed by NH Rochester, should be counted as

NH Logansport employees, putting it at a staff of 20. Bridge argues that under the "economic reality" test employed in *Hayden v. La-Z-Boy Chair Co.*, 9 F.3d 617, 622 (7th Cir. 1993), they count as NH Logansport employees because NH Logansport controls their work.

NH Logansport's response is that *Hayden* is inapposite because it pre-dates *Papa*. The court agrees, but there are also other reasons it does not help Bridge. First, prior to *Papa* when *Hayden*'s test would have been used, the Seventh Circuit also held that in counting the number of employees, part-time employees are only counted on days when they are present, and if they are not present every day of the week, the week doesn't count. *Ost v. West Suburban Travelers Limousine, Inc.*, 88 F.3d 435, 439 (7th Cir. 1996). As the statute itself states, there must be 20 employees "for each working day in each of twenty or more calendar weeks." 29 U.S.C. § 630(b). As Bridge admits, none of the three employees in question worked full-time for NH Logansport. For example, Cannedy "was the Business Manager for all of the entities owned by Jim Straeter" and "came to the New Holland Logansport location at least once a week." (DE #26-4 at 2, ¶ 4.) In other words, if the three at issue were NH Logansport employees, they were only part-time employees, and don't count towards the total.

Second, the test in *Hayden* was used to distinguish an independent contractor from an employee. It was then applied in *Rogers v. Sugar Tree Prods., Inc.*, 7 F.3d 577 (7th Cir. 1993) (*Rogers* is the case abrogated by *Papa*)to view employees of an affiliate corporation like independent contractors and so not count them as additional

14

employees. *Rogers*, 7 F.3d at 582. Comparing the present case to *Rogers* for that purpose, the three employees at issue (or at the very least, M. Straeter and S. Conner) are more like independent contractors. They performed specific, limited tasks for NH Logansport, and performed most (Cannedy) or all of their work from NH Rochester. In Conner's case, NH Rochester even appears to have invoiced NH Logansport for her services. (DE #26-1 at 8; p. 28, l .19-21.)

This independent-contractor analysis dovetails with *Papa* and the point made by NH Logansport in its reply: the fact that NH Logansport used the services of some of NH Rochester's employees, just as it might have used outside independent contractors to perform those functions, doesn't make them NH Logansport's employees. A small company:

> will consult an outside law firm, representing many business firms, rather than having a staff of in-house lawyers. It will hire an accounting firm to do its payroll rather than having its own payroll department. . . . None of these forms of contractual integration would subject tiny employers to the antidiscrimination laws, because the integration is not of affiliated firms. Why should it make a difference if the integration takes the form instead of common ownership, so that the tiny employer gets his pension plan, his legal and financial advice, and his payroll function from his parent corporation without contractual formalities, rather than from independent contractors?

*Papa*, 166 F.3d at 942. *Papa* concluded that it made no difference at all, because there was "no suggestion . . . that the business enterprise was splintered into separate corporations in order to defeat the antidiscrimination laws." *Id*. That is exactly the case here, and based on the undisputed facts, NH Logansport cannot be viewed (that is, no

15

question of fact suggests that it can be viewed) as having the required number of employees so as to be subject to the ADEA.

*Conclusion*

For the reasons above, defendant's motion for summary judgment (DE #21) is **GRANTED**. The clerk is to enter final judgment in favor of defendant New Holland Logansport, Inc., stating that plaintiff William Bridge shall take nothing by way of his complaint.

**SO ORDERED.**

Date: March 30, 2015

 s/ James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT